UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA THOMAS, as guardian on behalf of minor CARLY JO THOMAS,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; DOES 1 through 20, inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No.: 20-cv-1979-CAB-MDD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>[Doc. No. 19] |

　　　This matter is before the Court on Defendant County of San Diego's motion to dismiss Plaintiff's first amended complaint. [Doc. No. 19.] The motion has been fully briefed and the Court finds it suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

## I. BACKGROUND

Plaintiff Jessica Thomas, as guardian on behalf of minor Carly Jo Thomas,[1] filed this action against Defendants County of San Diego and DOES 1 through 20[2] on October 7, 2020. [Doc. No. 1.] After the County moved to dismiss Plaintiff's original complaint on March 22, 2021, the parties jointly moved for an extension of time for Plaintiff to file an amended complaint, which the Court granted on April 12, 2021. [Doc. Nos. 12, 13, 15.] Plaintiff then filed the First Amended Complaint ("FAC") on April 26, 2021, thereby mooting the County's motion to dismiss. [Doc. Nos. 12, 16.] The FAC asserts claims for: (1) "negligence – wrongful death," brought against all individual Doe Defendants; (2) municipal liability for failure to provide medical care, brought against the County of San Diego under 42 U.S.C. § 1983; (3) municipal liability for unconstitutional custom, policy,[3] or practice, brought against the County of San Diego under 42 U.S.C. § 1983; and (4) municipal liability for failure to train, brought against the County of San Diego under 42 U.S.C. § 1983. [Doc. No. 16 ¶¶ 25-60.]

The FAC alleges that on May 27, 2019, Jeremy Scott Thomas, father of minor Carly Jo Thomas, was booked into San Diego Central Jail for an unidentified crime. [*Id.* ¶ 13.] Upon being booked into Central Jail, Mr. Thomas informed "[Doe] Defendants that he had

---

[1] The original complaint named "Carly Jo Thomas, a minor, by and through her Guardian ad Litem, Jessica Thomas" as the plaintiff. [Doc. No. 1.] Plaintiff concurrently filed a motion to appoint Jessica Thomas as guardian ad litem of Carly Jo Thomas, which the Court denied on October 8, 2020. [Doc. Nos. 2, 4.] The FAC's caption states that the plaintiff is "Jessica Thomas, as guardian on behalf of minor, Carly Jo Thomas," but then states in the first paragraph that the plaintiff is "Carly Jo Thomas, a minor, by and through her Guardian ad Litem, Jessica Thomas." [Doc. No. 16 ¶ 1.] Because Plaintiff claims this was a "scrivener's error on deleting the term 'ad Litem' from the first paragraph of the FAC," the Court disregards the first paragraph and considers the plaintiff to be Jessica Thomas, suing on behalf of Carly Jo Thomas as her general guardian. FED. R. CIV. P. 17(c)(1)(A).

[2] Pursuant to the FAC, DOES 1 through 20 are "duly appointed law enforcement officers and/or employees or agents of COUNTY OF SAN DIEGO, subject to oversight and supervision by COUNTY OF SAN DIEGO's elected and non-elected officials." [Doc. No. 16 ¶ 18.]

[3] Although the FAC states that Plaintiff's third claim is for "municipal liability for unconstitutional custom, **practice**, or practice" in the subheading, this appears to be a typographical error based on the subsequent body paragraphs, which allege that the County "knowingly maintained, enforced and applied an official recognized custom, **policy** and practice" (emphasis added). [Doc. No. 16 ¶ 39.]

a history of narcotic drug addiction and was concerned that he would suffer from drug withdrawal while incarcerated." [*Id.* ¶ 14.] Two days later, on May 29, 2019 at approximately 4:00 AM, Mr. Thomas complained to Doe Defendants that he was experiencing "pain and symptoms, including chest pain." [*Id.* ¶ 17.] He was immediately transported to the medical unit of the Central Jail where he was kept "for approximately six hours without medical care." [*Id.*] Mr. Thomas was then discharged back to his cell at 10:18 AM and remained there "until he was found unresponsive in his cell sometime between 10:56 a.m. and 11:09 a.m." [*Id.*] Upon being found unresponsive, Mr. Thomas was transported by paramedics to the UCSD Medical Center Emergency Department, where "resuscitation efforts failed and [he] was pronounced dead at 12:07 p.m." [*Id.*]

On May 10, 2021, the County of San Diego moved to dismiss Plaintiff's FAC with prejudice. [Doc. No. 19.] The County argues that the FAC should be dismissed for failure to make "simple, concise, and direct" allegations under Rule 8(d), failure to meet procedural prerequisites for suing as Mr. Thomas' successor in interest, and failure to state a claim under Rule 12(b)(6). The motion is now fully briefed and ripe for resolution.

## II. LEGAL STANDARD

The familiar standards on a motion to dismiss apply here. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.

2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

## III. DISCUSSION

### A. "Negligence – Wrongful Death" Claim Against Doe Defendants

Plaintiff's first claim for "negligence – wrongful death" alleges that Doe Defendants negligently failed to provide Mr. Thomas with appropriate medical care "while he was suffering from a serious medical condition unrelated to narcotic drug addition [sic]," thereby causing Mr. Thomas' death from heart disease. [Doc. No. 16 ¶¶ 25-30.] The County argues that Plaintiff's claim is "replete with errors that confuse the issues," lacks a concise and simple statement of the allegations and relief sought, and fails to adequately allege the capacity in which Plaintiff brings this claim, thereby warranting dismissal under Rule 8. [Doc. No. 19-1 at 9-10.]

A wrongful death claim is a state law statutory claim that compensates specified heirs of the decedent for losses suffered as a result of the decedent's death. *LAOSD Asbestos Cases*, 240 Cal. Rptr. 3d 1, 11 (2018). California law provides that the decedent's surviving children (among other heirs) have standing to assert a claim for his death caused by the wrongful act or neglect of another. CAL. CIV. PROC. CODE § 377.60. Under California Code of Civil Procedure section 377.61, "damages for wrongful death are measured by the financial benefits the heirs were receiving at the time of death, those reasonably to be expected in the future, and the monetary equivalent of loss of comfort, society, and protection." *Boeken v. Philip Morris USA Inc.*, 159 Cal. Rptr. 3d 195, 198-99 (2013).

First, the County argues that because negligence and wrongful death are distinct claims under California law, Plaintiff's claim for "negligence – wrongful death" is too ambiguous to withstand scrutiny under Rule 8(d). [Doc. No. 19-1 at 10.] However, to establish a cause of action for wrongful death, the plaintiff must plead "the tort (negligence

or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Lattimore v. Dickey*, 191 Cal. Rptr. 3d 766, 773 (2015) (internal citations and italics omitted); *see also Novak v. Cont'l Tire N.*, 231 Cal. Rptr. 3d 324, 328 (2018) ("In any action for wrongful death resulting from negligence, the complaint must contain allegations as to all the elements of actionable negligence."). Therefore, Plaintiff is required to plead negligence as an element of her wrongful death claim, and the Court declines to dismiss her first cause of action on these grounds.

Second, the County argues that Plaintiff has not clearly alleged her identity or the capacity in which she brings her claim. [Doc. No. 19-1 at 9-10.] A child of a decedent has standing in her individual capacity to bring a wrongful death claim and recover her own "losses suffered as a result of a decedent's death." *LAOSD Asbestos Cases*, 240 Cal. Rptr. 3d at 11. However, damages sought in a representative capacity for harm suffered by the decedent are not recoverable under a wrongful death claim. *See Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1163-64 (C.D. Cal. 2018) (dismissing wrongful death claim where plaintiff sought to recover on her own behalf for alleged denial of medical treatment to the decedent).

The FAC does not expressly state whether Plaintiff's first cause of action is brought in her individual capacity as Mr. Thomas' child, or in a representative capacity as the successor in interest to Mr. Thomas' estate. Plaintiff asserts that because of Doe Defendants' conduct, "Decedent was caused to suffer severe pain and suffering and ultimately died." [Doc. No. 16 ¶ 30.] This language suggests that Plaintiff seeks compensation in a representative capacity for Mr. Thomas' pain and suffering. Yet in the same sentence, Plaintiff states that Mr. Thomas "lost his ability to provide financial and personal support," including "the loss of his love, companionship, comfort, care, assistance, protection, affection, society, moral support, and guidance to his minor daughter, Plaintiff, CARLY JO THOMAS, and will continue to be so deprived for the remainder of her natural life." [*Id.*] This language suggests that Plaintiff seeks damages for her own loss, which may only be recovered in her individual capacity under a wrongful

death claim. Because it is unclear in what capacity Plaintiff pursues her claim and what damages she seeks to recover under that claim, Plaintiff has failed to provide a "short and plain statement of the claim showing that [she] is entitled to relief." FED. R. CIV. P. 8(a)(2). Her claim thus warrants dismissal, with leave to amend to state her cause of action clearly and concisely. *See Carrigan v. Cal. State Legislature*, 263 F.2d 560, 565-66 (9th Cir. 1959) (holding that the trial court has discretion to determine whether there has been reasonable compliance with Rule 8).

Finally, the County argues that Plaintiff does not sufficiently specify the identity or role of any Doe Defendant in the alleged wrongdoing that caused Mr. Thomas' harm. [Doc. No. 19-1 at 12.] The Court agrees. While Plaintiff may refer to unknown defendants as "Does" at this stage, she must nevertheless "allege specific facts showing how each particular doe defendant violated [her] rights." *Keavney v. Cnty. of San Diego*, No. 3:19-cv-01947-AJB-BGS, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020) (internal citations omitted); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (a plaintiff must "set forth specific facts" as to each individual defendant's wrongdoing). The FAC vaguely claims that all twenty Doe Defendants acted negligently by "refusing to provide medical care to [Mr. Thomas] while he was suffering from a serious medical condition." [Doc. No. 16 ¶ 27.] However, Plaintiff has not clearly pleaded how each Doe Defendant acted negligently to cause Mr. Thomas' harm, as she does not link any particular negligent act to any specific individual actor. Without these supporting factual allegations, the Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiff's wrongful death claim fails to plead sufficient factual content for both the Court and Defendants to understand the allegations made and damages sought. Accordingly, the motion to dismiss is **GRANTED** as to Plaintiff's first cause of action, with leave to amend to provide a clear and concise statement of the allegations against each individual Doe Defendant and the relief sought.

## B. 42 U.S.C. § 1983 Claims Against County of San Diego

Plaintiff's second, third, and fourth claims are brought against the County of San Diego under 42 U.S.C. § 1983 seeking municipal liability for failure to provide medical care, unconstitutional custom, policy or practice, and failure to train, respectively. [Doc. No. 16 ¶¶ 25-60.] The County first argues that Plaintiff failed to comply with procedural prerequisites to bring suit as Mr. Thomas' successor in interest. [Doc. No. 19-1 at 13.] The County further argues that all three § 1983 causes of action fail to state a claim under Rule 12(b)(6) because Plaintiff (1) fails to allege a specific constitutional violation to support her claims of municipal liability; (2) fails to state a claim for deliberate indifference to a serious medical need; and (3) fails to allege a policy, pattern, or practice sufficient to support a *Monell* claim against the County. [*Id.* at 13-19.]

### 1. Plaintiff's Standing to Bring a Survival Action Under § 1983

A decedent's estate may bring a survival action under § 1983 to vindicate the decedent's constitutional rights and "recover damages on behalf of the decedent for injuries that the decedent has sustained." *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 429 (9th Cir. 1994). "A claim under 42 U.S.C. § 1983 survives the decedent if the claim accrued before the decedent's death, and if state law authorizes a survival action." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1228–29 (9th Cir. 2013) (citation omitted).

Under California law, "a cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest . . . , and [a survival] action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." CAL. CIV. PROC. CODE § 377.30. A plaintiff bringing a survival action must establish her standing by executing and filing an affidavit or declaration under penalty of perjury stating, among other things, facts to support that the

affiant is either the decedent's successor in interest[4] or is authorized to act on the successor in interest's behalf in the action. CAL. CIV. PROC. CODE § 377.32. The affidavit or declaration must also be accompanied by a certified copy of the decedent's death certificate. *Id.*

Plaintiff filed this action on October 7, 2020, then filed the FAC on April 26, 2021. [Doc. Nos. 1, 16.] On April 12, 2021, six months after filing the original complaint, Plaintiff filed the "Affidavit of Jessica Thomas Oursuant [sic] to California Code of Civil Procedure section 377.32." [Doc. No. 14.] The affidavit did not expressly comply with the requirements of section 377.32(5), instead stating:

> "I am the natural mother of Carly Jo Thomas, who is a minor and the sole heir and Jeremy Scott Thomas' successor in interest and Carly Jo Thomas is the only living child of Jeremy Scott Thomas, as defined in Section 377.11 of the California Code of Civil Procedure. As the biological mother of Carly Jo Thomas, who is eleven (11) years of age, . . . I am authorized to act on behalf of Carly Jo Thomas with respect to Jeremy Scott Thomas' interest in the instant action."

[*Id.* at 2.] The affidavit did not attach a certified copy of Mr. Thomas' death certificate due to an alleged delay in delivery. [*Id.*] Plaintiff requested permission to file the death certificate with the Court as soon as she received it. [*Id.*]

On May 27, 2021, Plaintiff filed a second "Affidavit of Jessica Thomas Oursuant [sic] to California Code of Civil Procedure section 377.32," stating the same basis for her standing as the paragraph quoted above. [Doc. No. 21.] Plaintiff also attached a certified copy of Mr. Thomas' death certificate. [*Id.* at 5-8.] The next day, Plaintiff filed her opposition to the County's motion to dismiss, stating that she "seeks leave to file a further affidavit to include the certified death certificate, which was received by the California Health Department this week." [Doc. No. 22 at 8.] The County argues that the Court

---

[4] For purposes of a survival action, the successor in interest "means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." CAL. CIV. PROC. CODE § 377.11.

8

should dismiss Plaintiff's survival claims because Plaintiff has conceded that "dismissal is proper so that she can file the required declaration and death certificate" to establish her standing. [Doc. No. 23 at 3.]

Even if the FAC could otherwise avoid dismissal, Plaintiff has failed to comply with the requirements of section 377.32 to establish her standing to bring a survival action. Plaintiff did not file an affidavit attaching the requisite certified copy of Mr. Thomas' death certificate until May 27, 2021—nearly eight months after the filing of her initial complaint and one month after filing the FAC. Further, although Plaintiff states that she is authorized to act on behalf of Carly Jo Thomas with respect to Mr. Thomas' interest in the action, she has not alleged sufficient facts (beyond conclusory statements) to establish that Carly Jo Thomas is Mr. Thomas' successor in interest. *See generally* CAL. PROB. CODE §§ 6401, 6402. Accordingly, Plaintiff's § 1983 survival claims are **DISMISSED** with leave to amend, subject to Plaintiff refiling an affidavit that complies with section 377.32.

## 2. Municipal Liability for § 1983 Violations

In *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978), the Supreme Court held that a municipality may be liable for a § 1983 violation if the plaintiff can show that a "policy or custom" of the municipality led to his injury, thereby creating the legal doctrine known as "*Monell* liability." Thus, a local government entity may be held liable under § 1983 when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Oviatt v. Pearce*, 954 F.2d 1470, 1473–74 (9th Cir. 1992) (quoting *Monell*, 436 U.S. at 691). However, a local government entity cannot be held liable when the plaintiff has not adequately alleged that some constitutional right was infringed. *Monzon v. City of Murrieta*, 978 F.3d 1150, 1164 (9th Cir. 2020); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (noting that if the officer inflicted no constitutional injury on the plaintiff, it is "inconceivable" that the government entity could be liable to the plaintiff).

### a. Mr. Thomas' Alleged Constitutional Injury

As discussed above, Plaintiff has not clearly pleaded any specific action taken by

any Doe Defendant that would amount to negligence, much less any action that would amount to a constitutional violation. For example, under Plaintiff's claim for failure to provide medical care, the FAC states that the County employed and retained as deputy sheriffs and other personnel those who had "dangerous propensities for abusing their authority and for mistreating inmates who they believed were drug addicts by failing to provide medical care necessary to treat symptoms they believed were related to withdrawal from narcotics." [Doc. No. 16 ¶ 33.] This conclusory statement is unsupported by any specific factual allegation in the FAC. Plaintiff alleges that as soon as Mr. Thomas complained of "pain and symptoms" to Doe Defendants, he was taken to the jail's medical unit until he was discharged back to his cell six hours later. [*Id.* ¶ 17.] When Mr. Thomas was found unresponsive in his cell shortly thereafter, he was immediately transported to the UCSD Medical Center Emergency Department. [*Id.*] While Plaintiff does not state what happened while Mr. Thomas was in the jail's medical unit, she also does not plead any facts to support an allegation that the County's deputy sheriffs mistreated inmates believed to be drug addicts by failing to provide them medical care.[5] The Court cannot merely assume, absent some concrete factual allegation, that any Defendant's action amounts to a constitutional violation on which to base a § 1983 claim. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions . . . will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal citations omitted).

---

[5] To establish a claim of inadequate medical care, a prisoner must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted). If the prisoner establishes a sufficiently serious medical need, he must then "show the [official's] response to the need was deliberately indifferent." *Id.* The extent of Plaintiff's factual allegations regarding Defendants' alleged failure to provide adequate medical care is that Mr. Thomas experienced "pain and symptoms, including chest pain," and then was immediately transported to the jail's medical unit where he was kept "for approximately six hours without medical care, before being 'discharged back to his cell.'" [Doc. No. 16 ¶ 17.] These allegations fall far short of the standard articulated in *Jett* to state a claim of inadequate medical care.

Similarly, Plaintiff fails to allege some constitutional injury to support her fourth cause of action for failure to train. A "failure to train" claim requires that the plaintiff show a constitutional injury that could have been avoided through proper training. *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). Plaintiff alleges that the County failed to train its deputy sheriffs "to recogniz[e] the necessity of medical attention to inmates with serious medical conditions, rather than harboring disdain towards inmates suffering from narcotic drug addiction, and to respond appropriately to serious, life threatening symptoms of actual illnesses, rather than treat narcotic drug addicts with careless disregard for their well being [sic], including [Mr. Thomas]." [Doc. No. 16 ¶ 51.] Plaintiff also alleges that the County failed to implement training to remedy "its deputy sheriffs [sic] continued inappropriate attitude towards incarcerated drug addicts, and failure to provide adequate medical care for such inmates." [*Id.* ¶ 53.]

The Court summarized the extent of Plaintiff's substantive factual allegations above and finds that none of them provide support for these claims. Plaintiff has not pleaded any facts to plausibly allege that the County's deputy sheriffs "harbor[ed] disdain towards inmates suffering from narcotic drug addiction" or treated Mr. Thomas with "careless disregard" for his wellbeing because of his history of narcotic abuse. Nor do any of the facts provided indicate that Doe Defendants had a "continued inappropriate attitude towards incarcerated drug addicts." [*Id.*] Rather, the facts Plaintiff did plead suggest that Doe Defendants acted promptly in transporting Mr. Thomas to the medical unit upon notification that he was in pain, and again to the Emergency Department after finding him unresponsive.

The FAC does not contain sufficient factual material—beyond "the-defendant-unlawfully-harmed-me accusation[s]," *Iqbal*, 556 U.S. at 678—for the Court to determine if Mr. Thomas suffered a constitutional harm. Without plausible allegations of constitutional injury, Plaintiff cannot establish that proper training would have changed the outcome. Accordingly, Plaintiff's *Monell* claims warrant dismissal.

### b. The County's Alleged "Policy or Custom"

Finally, "it is well-settled that in claims brought under 42 U.S.C. § 1983, municipalities are liable only for constitutional violations resulting from an official 'policy or custom.'" *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1216 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 694). Thus, to establish municipal liability under § 1983, Plaintiff must show a direct causal link between the County's municipal policy or custom and the alleged constitutional deprivation. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc). "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989). Rather, this policy or custom must be a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question," such that the municipality was the "moving force" behind the injury alleged. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion); *Bd. Of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Notwithstanding the fact that Plaintiff has not pleaded a clear constitutional injury on which to base her *Monell* claims, Plaintiff also fails to plausibly allege the existence of a policy or custom of the County that directly caused Mr. Thomas' harm. For example, Plaintiff claims that the County had a policy of "warehousing seriously ill inmates believed to be narcotic drug addicts in its medical dispensary, rather than provide medical diagnosis and care necessary to preserve life and treat serious medical conditions." [Doc. No. 16 ¶ 39.] This allegation is entirely unsupported by Plaintiff's statement of facts. The FAC does not plead any facts indicating that Doe Defendants believed Mr. Thomas to be a drug addict and therefore intentionally refused to provide him medical care. Moreover, even if Plaintiff had stated enough to show that Doe Defendants wrongfully refused to provide Mr. Thomas with medical care, a single incident of unconstitutional action by jail deputies cannot alone prove the existence of a County-wide policy or custom. *Davis*, 869 F.2d at

12

1233-34. Plaintiff fails to identify any other evidence to support her contention that the County employed the policies or customs she claims it did.

Because the bulk of Plaintiff's allegations amount to no more than conclusory statements couched as factual allegations, Plaintiff's claims cannot survive a motion to dismiss under Rule 12(b)(6). Accordingly, the County's motion to dismiss Plaintiff's three *Monell* claims is **GRANTED**, and Plaintiff's second, third, and fourth causes of action are dismissed.

**IV. CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss the FAC is **GRANTED**, and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.

Defendant County of San Diego is hereby **ORDERED** to provide any reports regarding Mr. Thomas's death and investigations thereof in their **unredacted** state to Plaintiff forthwith, including the Medical Examiner Investigator's Report and the Autopsy Report. If the County believes that a protective order is required, it may make an application to the Court as to what needs to be redacted or provided under a protective order. The County must either provide the unredacted reports to Plaintiff and notify the Court of such, or file a motion for a protective order (with a copy of the unredacted reports at issue provided to the Court in camera), on or before **July 19, 2021**.

Plaintiff may file a second amended complaint no later than **twenty-one (21)** calendar days following receipt of the unredacted reports. If Plaintiff chooses not to file an amended complaint by then, the Clerk of Court shall close this case.

It is **SO ORDERED**.

Dated: July 1, 2021

_____
Hon. Cathy Ann Bencivengo
United States District Judge